NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
:
*In re:*                                                                       :
:         Case No. 18-10760 (JLG)
Igor Eric Kuvykin,                                               :         Chapter 11
:
                                                    Debtor.   :
:
-------------------------------------------------------- x

**MEMORANDUM DECISION AND ORDER GRANTING WB KIRBY HILL, LLC'S
MOTION FOR IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSES**

**A P E A R A N C E S:**

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
*Attorneys for WB Kirby Hill, LLC*
Jil Mazer-Marino, Esq.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194

WAYNE M. GREENWALD, P.C.
*Attorneys for the Debtor*
Wayne M. Greenwald, Esq.
475 Park Avenue South
26th Floor
New York, NY 10016

**HON. JAMES L. GARRITY, JR.
U.S. BANKRUPTCY JUDGE**

Introduction

Igor Kuvykin, the chapter 11 debtor herein (the "Debtor"), resides with his wife and children at 11 Mansion Drive, Muttontown, New York 11791 (the "Property"). The Debtor and his wife owned the Property until on or about March 20, 2018, when WB Kirby Hill, LLC ("WB Kirby"), a creditor of the Debtor whose claim is secured by a mortgage against the Property, purchased the Property at a foreclosure sale. WB Kirby has commenced a proceeding in state court to evict the Kuvykins from the Property. Although the Kuvykins are occupying the Property, the Debtor has not paid WB Kirby for their use of the Property and has not offered to do so. The matter before the Court is WB Kirby's motion pursuant to §§ 105 and 503 of the Bankruptcy Code, and Rule 9014 of the Federal Rules of Bankruptcy Procedure, for an order compelling the Debtor to pay immediately the administrative expense incurred in the Kuvykins' use and occupancy of the Property (the "Motion").[1] The Debtor opposes the Motion (the "Opposition").[2] The Motion is GRANTED, as set forth herein.

---

[1]  *See* Creditor WB Kirby Hill, LLC's Motion for Order Compelling Immediate Payment of Administrative Expense [ECF No. 53]. In support of the Motion, WB Kirby filed the Declaration of Karen Sharf In Support of Creditor WB Kirby Hill, LLC's Motion for Order Compelling Immediate Payment of Administrative Expense [ECF No. 53-1] (the "Sharf Declaration"), and the Declaration of Anthony R. Filosa In Support of Creditor WB Kirby Hill, LLC's Motion for Order Compelling Immediate Payment of Administrative Expense [ECF No. 53-2] (the "Filosa Declaration").

   WB Kirby also filed the Reply to the Opposition of Debtor Igor Eric Kuvykin to Creditor WB Kirby Hill, LLC's Motion for Order Compelling Immediate Payment of Administrative Expense [ECF No. 58] (the "Reply"). In support thereof, Kirby filed the (i) Declaration of Eric Kuvykin Opposing Motion to Remand, Reply at Ex. A (the "Declaration In Opposition to Remand"); (ii) Transcript of Section 341 Meeting of Creditors, Reply at Ex. B ("341 Transcript"); (iii) Declaration of Josh Nichols in Opposition to the Debtor's Motion For Orders: A.) Pursuant to 11 U.S.C. § 362(c)(3)(C)(i)(III), Imposing Extending The Automatic Stay Afforded The Debtor On His Third Bankruptcy Petition In One Year, And .B) Determining That Estate Property Is Subject To The Automatic Stay With Point and Authorities, Reply at Ex. C (the "Nichols Declaration"); (iv) Zillow Record of the Property advertised for rent in May 2014 for $40,000/month, Reply at Ex. D (the "Zillow Rental Record").

[2]  *See* The Debtor's Opposition To WB Kirby Hill, LLC's Motion For The Immediate Payment Of An Administrative Expense With Points And Authorities [ECF No. 57]. The Opposition includes a "Verification" in which the Debtor declares that he has "personal knowledge of the facts stated" by his counsel in the Opposition, and knows the facts to be "true to the best of my knowledge, information and belief except as to those matters which are alleged upon information and belief and as to those matters I believe them to be true." *See* Opp'n at 6.

1

Jurisdiction

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

Facts

The Property is an "original manor home" that is situated on 7 acres of land in a gated community in Muttontown, New York. *See* Sharf Decl. ¶ 5. Its features include ten bedrooms, nine bathrooms, six fireplaces, an in ground swimming pool, tennis courts, and a three car garage. *Id.* WB Kirby was the original holder of a $2,275,000 mortgage note and mortgage against the Property. The Debtor has not made a payment to WB Kirby on account of the indebtedness since February 2014. Filosa Decl. ¶ 13. As a result of the Kuvykins' various defaults under the note and mortgage, on May 6, 2014, WB Kirby commenced an action in New York State Supreme Court to foreclose its mortgage. *Id.* ¶ 5. On September 8, 2017, the state court entered a judgment of foreclosure and sale in that action in favor of WB Kirby in the amount of $3,432,193.32, as of January 25, 2017, plus interest and fees. *Id.* ¶ 6. On March 20, 2018, the state court-appointed referee conducted a foreclosure sale of the Property, and WB Kirby was the highest bidder at $3,000,000. *Id.* ¶ 7. That day, the referee executed the deed in foreclosure, transferring title of the Property to WB Kirby. *Id.*[3]

---

[3] The Debtor commenced this bankruptcy case on March 19, 2018 (the "Petition Date") – the day before the foreclosure sale. He is a serial bankruptcy filer as this case is the third case he has filed in a five-month period. The Debtor filed his first two cases in the United States Bankruptcy Court for the Eastern District of New York. Both were dismissed pursuant to motions filed by WB Kirby. The most recent of those two cases was dismissed on March 8, 2018 – eleven days before the Debtor filed this case. WB Kirby takes the position that by application of § 362(c)(4)(D) of the Bankruptcy Code, the automatic stay has not taken effect in this case.

2

On June 21, 2018, WB Kirby commenced an eviction proceeding (the "Eviction Proceeding") against the Kuvykins to recover possession of the Property, by filing a Notice of Petition and Petition in the District Court of the State of New York, County of Nassau. Filosa Decl. ¶ 9. That matter was returnable before the state court on July 2, 2018. *Id.* ¶ 10. The proceeding did not go forward on the return date because on July 1, 2018, the Debtor filed a Notice of Removal to remove the Eviction Proceeding to the United States District Court for the Eastern District of New York. *Id.* On July 17, 2018, WB Kirby moved that court pursuant to 28 U.S.C. §§ 1334 and 1452 to abstain from hearing the Eviction Proceeding, and to remand the action to the state court (the "Motion to Remand"). *Id.* ¶ 11.[4] The Debtor opposed that motion.[5] On August 7, 2018, the district court heard argument on the Motion to Remand. The matter is *sub judice* before the district court.

## The Motion

In the Motion, WB Kirby seeks (i) the allowance of an administrative expense claim, at the rate of $25,000/month, for the Debtor's use and occupancy of the Property from March 20, 2018 through and including the date that the Debtor delivers possession (free of all tenancies) of the Property to WB Kirby; (ii) the immediate payment of the use and occupancy of the Property incurred through the date of the order granting the Motion; and (iii) the payment of use and occupancy going forward on the first day of each month in advance. Mot. ¶ 20. WB Kirby contends that "[t]he Debtor's estate has benefitted from the Debtor's occupancy of the Property because, among other things, the Debtor has had the use of the Property for his residence,

---

[4]   *See* Petitioner's Motion for Abstention Pursuant to 28 U.S.C. §§ 1334(c)(1) and (c)(2) and Remand Pursuant to 28 U.S.C. § 1452(b) [18-cv-03812 ECF No. 6]. References to the district court docket will be to "DC ECF No. __."

[5]   *See* Declaration in Opposition to Remand [DC ECF No. 9] and Defendant's Memorandum of Law Opposing Motion to Remand [DC ECF No. 9-4].

3

obviating the cost of paying rent and moving to a new residence." *Id.* ¶ 17.  WB Kirby further contends that $25,000 per month is the market rental rate for the Property.  In doing so, as discussed below, it relies on the opinion of Karen Sharf, a New York State licensed real estate broker.

Discussion

Section 503(b)(1)(A) of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate[.]"  11 U.S.C. § 503(b)(1)(A).  Administrative expenses are accorded priority treatment under § 507(a) of the Bankruptcy Code. *See* 11 U.S.C. § 507(a).  An expense will be accorded such priority if it "arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession and . . . 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor in possession in the operation of the business.'"  *Trustees of the Amalgamated Ins. Fund v. McFarlin's Inc. (In re McFarlin's Inc.),* 789 F.2d 98, 101 (2d Cir. 1986) (internal citations omitted) (quoting *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976)).  "The burden of proving entitlement to an administrative expense is on the claimant and the measure of proof is a preponderance of the evidence."  *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) (citing *In re Englewood Community Hosp. Corp.*, 117 B.R. 352, 358 (Bankr. N.D. Ill. 1990)); *see also Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 5 (1st Cir. 1992) ("The burden of proving entitlement to priority payment as an administrative expense . . . rests with the party requesting it.") (citing *Woods v. City Nat. Bank & Trust Co.*, 312 U.S. 262, 268, 61 S.Ct. 493, 497 (1941)).  To meet that burden, the claimant must demonstrate that (i) its claim

4

arose from a transaction with or on account of consideration furnished to the debtor-in-possession, and (ii) the transaction or consideration directly benefited the debtor-in-possession. *In re Patient Educ. Media, Inc.*, 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998) (citations omitted); *see also In re CIS Corp.*, 142 B.R. 640, 643 (S.D.N.Y. 1992) (A creditor seeking to establish a right to an administrative expense claim "[f]irst must show that . . . the debtor-in-possession (not the pre-petition entity) incurred the transaction on which the claim is based or that the claimant furnished the consideration to the debtor-in-possession (not the pre-petition entity). Second, it must show that the transaction resulted in a direct benefit for the debtor-in-possession.") (citations omitted). Where, as here, the alleged administrative expense claim arises out of the debtor's use of the creditor's property, the consideration giving rise to that claim is measured by the extent to which the debtor has been unjustly enriched through its use of the property. *See In re Patient Educ. Media, Inc.,* 221 B.R. at 101 (citing *United Trucking Serv. Inc. v. Trailer Rental Co., Inc. (In re United Trucking Serv. Inc.),* 851 F.2d 159, 161 (6th Cir. 1988)).

The Court considers whether WB Kirby has satisfied its burden of proof. The day after the Petition Date, WB Kirby purchased the Property out of foreclosure. The Debtor and his family have resided at the Property since the Petition Date, and the administrative expense claim that WB Kirby asserts against the Debtor is predicated on the Debtor's acknowledged post-petition use and occupancy of the Property. As such, WB Kirby has established the first prong of the administrative claim test. *See In re Espinosa*, 542 B.R. 403, 411 (Bankr. S.D. Tex. 2015) (administrative expense claim of creditor, which had purchased chapter 13 debtor's homestead property at a pre-petition non-judicial tax lien foreclosure sale, for lost opportunity represented by debtor's possession of the homestead, was "a continuing involuntary transaction arising out of [d]ebtor's possession, and thus satisfying the requirement that the transaction [arise] post-

5

petition."); *see also In re Bridgeport Nurseries, Inc.*, 190 B.R. 215, 221 (Bankr. D.N.J. 1996) (post foreclosure, the bank, as owner of the premises previously occupied by the debtor, held an administrative priority expense claim for debtor's post-petition use and occupancy of the premises). WB Kirby also has met its burden of establishing that the Debtor benefitted from his family's continued use and occupancy of the Property. Thus it has satisfied the second prong of the test. To that end, although the Debtor is not occupying the Property pursuant to a lease agreement with WB Kirby, cases involving the accrual of administrative expense liabilities by a debtor/lessee who remains in possession of a leased premises post-petition are instructive as to the methodology that the Court should employ in assessing whether the debtor has "benefitted" from its post-petition possession of the property. *See Geltzer v. Helen–May Holdings, LLC (In re Kollel Mateh Efraim, LLC)*, No. 04-16410, 2010 WL 3782050, at *6 (Bankr. S.D.N.Y. Sept. 21, 2010) ("the lease cases still illustrate how [the administrative expense claim] rules apply to the possession and use of a non-debtor's property."), *aff'd*, 456 B.R. 185 (S.D.N.Y. 2011). Under these cases, no administrative priority claim arises if the debtor "merely possesses the [p]roperty" – but does not use it. *Id.* at *7 (citing *In re Patient Educ. Media*, 221 B.R. at 102). In contrast, "[i]f a lessee continues to use the premises post-rejection, then a benefit has been conferred upon the estate which constitutes an administrative expense under section 503(b)." *Id.* (quoting *In re DVI, Inc.*, 308 B.R. 703, 708 (Bankr. D. Del. 2004)) (internal quotation marks omitted). In that way, the "benefit" test is objective and straightforward. "If a debtor in possession actually uses leased property prior to rejection, the lessor may recover the unpaid rent, or the reasonable value of the debtor in possession's use and occupancy, as an administrative expense . . . . however, [if] the debtor in possession does not use the property, the nondebtor is relegated to an unsecured claim." *In re Patient Educ. Media, Inc.*, 221 B.R. at 102.

6

The Debtor and his family are not merely in possession of the Property – they use and occupy it as their sole residence.  As such, they are plainly benefitting from their continued, post-petition use and occupancy of the Property.  *See In re Espinosa*, 542 B.R. at 412-414 (court finding that the debtor plainly benefitted from its post-petition rent-free use and occupancy of the homestead); *see also In re Bridgeport Nurseries, Inc.*, 190 B.R. at 219 ("it is undisputed that the premises have been used and occupied by the debtor prior to foreclosure sale and that this has been a benefit to the estate.  Without the premises the debtor would not have a place from which to continue its business."); *Zagata Fabricators, Inc. v. Superior Air Products*, 893 F.2d 624, 627 (3d Cir. 1990) ("In order to survive, a financial entity almost always needs a physical space to occupy.  When a debtor owns no suitable real estate of its own, its only choice is to become a tenant, and to assume the obligations of paying periodic rent to a landlord.  In such circumstances, therefore, rent is clearly an 'actual, necessary' cost of preserving the estate, since the debtor's survival depends on its ability to pay the landlord for the right to possess the space necessary to conduct its business.").

      The Debtor's assertions to the contrary are unpersuasive.  Although the Debtor acknowledges "that [he] and his family occupy the Property[,]" Opp'n ¶ 7, he says such occupancy "does not necessarily benefit the Debtor's estate . . . . especially . . . because [WB Kirby is] prosecuting proceedings to evict the Debtor and his family from the Property."  *Id.* ¶¶ 8-9.  The Court attaches no weight to that argument.  The fact that WB Kirby is prosecuting an eviction action against the Debtor and his family does not diminish the benefits the Debtor and his family are realizing through their continued use and occupancy of the Property.  Indeed, in opposing the Motion to Remand the Eviction Proceeding to state court, the Debtor and his counsel argued to the district court that the Debtor's continued use and occupancy of the

7

Property was not merely beneficial to the Debtor. They asserted that the Debtor "having a place to live is *integral* to the Reorganization." *See* Decl. In Opp'n to Remand, ¶ 3d. (emphasis added); *see also id.* ¶ 3c. ("Uprooting my family and me from our home threatens to disrupt and impede the Reorganization."); *id*. ¶ 4 ("It is hard to imagine running a reorganization case while homeless."); *id*. ¶ 15 ("Being homeless interferes with my Reorganization.").[6] The Debtor and his estate plainly are benefitting from the continued use and occupancy of the Property as his family's residence.

WB Kirby has met its burden of proving that it is entitled to an administrative expense claim on account of the Debtor's post-petition use and occupancy of the Property. Now, the Court will fix the amount of that claim. *Matter of JAS Enterprises, Inc*., 180 B.R. 210, 217 (Bankr. D. Neb. 1995) ("Once the threshold requirements of § 503(b)(1)(A) are met . . . the court must determine the amount of the allowed administrative claim."), *subsequently aff'd*, 113 F.3d 1238 (8th Cir. 1997). In doing so, the Court is mindful that a priority claim awarded to one unsecured creditor necessarily will be a detriment to other unsecured creditors. *See In re Patient Educ. Media, Inc.,* 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998) ("[T]he priority elevates the payment of the administrative expense claim to the detriment of the unsecured creditors[.]"). Moreover, it is clear that "[t]he focus on allowance of a priority is to prevent unjust enrichment of the estate, not to compensate the creditor for its loss." *In re Enron Corp.*, 279 B.R. 79, 85 (Bankr. S.D.N.Y. 2002) (citing *In re R.H. Macy & Co., Inc.*, 170 B.R. 69, 78 (Bankr. S.D.N.Y. 1994)); *see also In re Kollel Mateh Efraim, LLC*, No. 04-16410, 2010 WL 3782050, at *7 (Bankr. S.D.N.Y. Sept. 21, 2010) ("The fact that the debtor has deprived the non-debtor of its

---

[6] The Debtor testified to the same effect at his section 341 meeting of creditors. *See* 341 Transcript 26:19-23 ("MS. NAKANO: So I take it that as you sit here today, you're not sure whether you'd be able to reorganize without the [Property]? MR. KUVYKIN: I would probably not be able to reorganize without the [Property]. How would I do that?").

8

property does not automatically trigger an administrative claim. The pertinent question is the actual benefit to the estate, not the loss sustained by the creditor.") (citing *In re Enron Corp.*, 279 B.R. at 85). Here, too, the lease rejection cases are instructive. It is well settled that where "a Chapter 11 debtor occupies property under a rejected lease, the debtor is liable only for the reasonable value of its use and occupancy of the property." *Farber v. Wards Co.*, 825 F.2d 684, 689 (2d Cir. 1987); *see also S & W Holding Co. v. Kuriansky*, 317 F.2d 666, 667 (2d Cir. 1963) ("The quantum of allowance for use and occupation by the receiver or trustee is measured by 'the reasonable value of such use and enjoyment.'") (quoting 3 COLLIER ON BANKRUPTCY 1516 (14th ed. 1961)); *In re REFCO, Inc.*, No. 07 CIV. 4784, 2008 WL 140956, at *5 (S.D.N.Y. Jan. 14, 2008) (holding that "[i]f a court concludes that a claim qualifies for administrative expense priority, the estate becomes liable for 'the reasonable value of any benefits conferred.'") (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 540 n.8 (1984)), *aff'd in part, appeal dismissed in part sub nom. In re Refco Inc.*, 331 F. App'x 12 (2d Cir. 2009); *Figone v. Spear (In re GFS Creations, Inc.)*, 240 B.R. 43, 45 (N.D. Cal. 1999) (The amount of the expense allowed is the "reasonable rental value of the premises which were occupied and used by the Trustee.") (citing *In re Aerospace Techs., Inc.*, 199 B.R. 331, 340 (Bankr. M.D.N.C. 1996)). Ordinarily, "a presumption exists that the amount of rent reserved in the lease constitutes a fair and reasonable value, but . . . the presumption can be rebutted by contrary evidence of reasonable worth which may include the debtor's actual use." *In re ICS Cybernetics, Inc.*, 111 B.R. 32, 41 (Bankr. N.D.N.Y. 1989); *see also In re Aerospace Techs., Inc.*, 199 B.R. at 340 ("[T]he measure of the benefit to the estate is the reasonable rental value of the premises which were occupied and used by the Trustee. While the court has discretion to fix the reasonable administrative rent, the contract rent is presumptively the reasonable value of such use and occupancy."). Where, as

9

here, the Debtor did not occupy the Property pursuant to a lease, there is no rental rate that is presumptively reasonable. *See In re Kollel Mateh Efraim, LLC*, 2010 WL 3782050, at *7; *In re Aerospace Techs., Inc.,* 199 B.R. at 340.

Both parties submitted evidence of the reasonable rental value of the Property. *In re Jeans.com*, 491 B.R. 16, 24-25 (Bankr. D.P.R. 2013) (holding that in the absence of a preexisting lease agreement, "either party may offer evidence to prove a different reasonable value," but that "[a]bsent of evidentiary support, the court cannot declare that the amounts claimed by [the creditor] are reasonable[.]") (internal citations omitted). As noted previously, WB Kirby submitted a declaration from Karen Sharf, a New York State-licensed real estate broker. Ms. Sharf is an associate real estate broker with Danielle Gale Sotheby's International Realty in Greenvale, New York. Sharf Decl. ¶ 2. She manages an office of over 50 agents, and has been an active agent for more than 30 years. *Id.* Based upon Ms. Sharf's review of certain comparable properties in the geographical area,[7] and in light of her in-depth knowledge of the current market conditions in that area, she opines that the current monthly rental value of the Property is between $20,000 and $25,000. *Id.* ¶ 6. The Debtor does not challenge Ms. Sharf's qualifications to opine on the current monthly rental value of the Property or the methodology she employed to do so. The Debtor offered no expert testimony to rebut Ms. Sharf's opinion. Instead, the Debtor focuses on alleged "problems and conditions" at the Property in asserting that the rate of $25,000/month is "overrated." Opp'n ¶¶ 13-14. Specifically, the debtor reports that "among the Property's problems" are: (i) leaking roof; (ii) mold; (iii) asbestos;[8] (iv) faulty

---

[7] Annexed as Ex. 1 to the Sharf Declaration are documents identifying the properties Ms. Sharf evaluated in reaching her opinion.

[8] The Debtor "believes, based on research, that one of his daughters developed diabetes due to undisclosed asbestos on the Property." Opp'n ¶ 18.

electrical and lighting systems; (v) interior ceilings collapsing; (vi) odor emanating from the basement; (vii) driveway in disrepair; (viii) lack of security (which "caused" a theft at the Property); and (ix) WB Kirby using the Property's watering system to water the entire development (at the Debtor's expense). *Id.* ¶ 15.[9] Although the Debtor has enumerated the alleged problems at the Property, he did not substantiate or quantify them, or even attempt to do so. Rather, he baldy asserts that the "conditions" at the Property "generate a liability," *id.* ¶ 17; that "[i]t seems unlikely that the Property in [sic] rentable," *id.* ¶ 19; and that in any event, "[a] $25,000 monthly rent appears to be fantasy." *Id.* ¶ 20. It is well settled that an owner of real property may testify as to the value of its property "because the owner is presumed to have 'special knowledge' of the property." *United States v. 25.202 Acres of Land & building affixed to land located in Town of Champlain, Clinton Cty., N.Y.*, 860 F. Supp. 2d 165, 182 (N.D.N.Y. 2010) (citing *United States v. 10,031.98 Acres of Land, More or Less, Situate in Las Animas Cty., Colo.*, 850 F.2d 634, 636 (10th Cir. 1988)). Although the Debtor no longer owns the Property, he is in possession of it, and owned it for more than six years preceding the foreclosure sale. Thus, the Court finds him competent to testify to the value of the Property. Still, "[i]t is

---

[9] The Debtor also contends that the Motion should be denied because WB Kirby is not providing "quiet enjoyment" of the Property. Opp'n ¶ 2c. The Debtor provides neither legal nor factual support for that contention. There is none. As such, the Court rejects it.

Under New York law, the "covenant of quiet enjoyment" arises from a warranty in a deed, and is implied in real property leases. In a deed, the covenant is "virtually the same" as a warranty of title to the real property between the grantor and grantee, and the same "can be broken only by an eviction, actual or constructive, from the premises conveyed, or some portion thereof[.]" *Rajchandra Corp. v. Tom Sawyer Motor Inns, Inc.*, 106 A.D.2d 798, 801, 484 N.Y.S.2d 257, 261 [3rd Dept 1984] (quoting *Scriver v. Smith*, 100 N.Y. 471, 477, 3 N.E. 675, 676 (1885)); *see also* N.Y. Real Prop. Law § 253 ("A covenant that the grantee 'shall quietly enjoy the said premises,' must be construed as meaning that such grantee . . . shall and may, at all times thereafter, peaceably and quietly have, hold, use, occupy, possess and enjoy the said premises . . . without any let, suit, trouble, molestation, eviction, or disturbance of the grantor[.]"). The covenant of quiet of enjoyment that is implied in a lease of real of real property "is an agreement on the part of the landlord that for the period of the term of the lease the tenant shall not be disturbed in his quiet enjoyment of the leased premises." *Yochim v. McGrath*, 165 Misc. 2d 10, 16, 626 N.Y.S.2d 685, 689 (City Ct. 1995) (quoting 2 Rasch, New York Landlord & Tenant—Summary Proceedings, § 27.1, at 321 (3d ed.)). Neither concept has application to this case. The Debtor is not occupying the Property pursuant to a deed from WB Kirby – or anyone else, and it is not leasing the Property from WB Kirby – or anyone else. WB Kirby is not obligated to provide the Debtor with "quiet enjoyment" of the Property.

11

generally understood that the opinion of the owner is so far affected by bias that it amounts to little more than a definite statement of the maximum figure of his contention." *Besen v. State*, 17 Misc. 2d 119, 131, 185 N.Y.S.2d 495, 504 (N.Y. Ct. Cl. 1959).  Accordingly, "[t]he weight of [the owner's] testimony may be very little[.]" *Id.*, 185 N.Y.S.2d at 504 (citing Jahr, Eminent Domain, Valuation and Procedure, 205 (1953)).  That is plainly the case here.  In opposing the Motion, the Debtor merely parrots the vague, unsubstantiated, and conclusory statements of his counsel in the Opposition relating to the alleged "problems" at the Property.  The Debtor and his counsel had ample time to prepare the Opposition to the Motion.  That the Debtor failed to buttress those self-serving assertions with documentary or other evidence is telling, as it evidences the weakness of his position.  That is especially so, in light of the fact that in May 2014, the Debtor listed the Property for rent at the sum of $40,000 per month.  Reply at Ex. D (Zillow Rental Record for the Property).  The Debtor's contentions regarding the Property lack probative value.  They do not impeach, call into question, or otherwise undermine Ms. Sharf's assessment of the fair rental value of the Property.  The Court accords little weight to the Debtor's view of the rental value of the Property.

Nor does the Court credit the Debtor's assertion that there is value to WB Kirby in allowing the Debtor and his family to remain in possession and control of the Property without paying use and occupancy charges.  His theory is that "[h]aving the Debtor's family at the Property protects the Property from vandalism which would occur if the Property was vacant." Opp'n ¶ 22.  He says that "[h]iring security to protect the Property would be expensive," *id.* ¶ 24, while "[he] and his family protecting the Property costs [WB Kirby] nothing." *Id.* ¶ 25.  Not only has the Debtor failed to quantify the value of any of the so-called savings to WB Kirby, he ignores the fact that his continued occupation of the Property costs WB Kirby approximately

12

$34,000 per month in real estate taxes and $1,922.89 per month in property insurance.  Reply ¶ 9; Nichols Decl. ¶¶ 19 n.2, 20.  Further, it is undisputed that the Debtor's continued possession of the Property makes it impossible for WB Kirby to effectively market the Property for sale or rent.  Sharf Decl. ¶ 7.  The Debtor's continued use and occupancy of the Property clearly does not redound to WB Kirby's benefit.

During argument on the Motion, the Debtor contended that one deficiency in Ms. Sharf's report is that she did not have access to the Property when she compiled the report.  Thus, the Debtor contends that Ms. Sharf's report is flawed because it fails to take account of the alleged problems with the Property set forth above.  The Court finds no merit to that claim.  The Debtor has failed to substantiate any of the allegations relating to the "problems" with the Property.  As previously noted, for that reason, the Court attaches little weight to those contentions.  In this light, the Court finds that Ms. Sharf's failure to view the interior of the Property does not compromise the probative value of her report.  Moreover, the fact that the Debtor continues to reside in the Property with his family – and that he says that his ability to continue to do so is "integral" to the success of his reorganization – further discredits his unsubstantiated assertions that the alleged problems exist, let alone that they substantially depress the rental value of the Property.

WB Kirby contends that based on the Sharf report, the reasonable fair rental value of the Property is $25,000/month.  That is the high end of the range provided by Ms. Sharf.  Based upon the Court's review of the Sharf Declaration and the exhibits thereto, the Debtor's critique of Ms. Sharf's opinion, and the other evidence in the record, the Court finds that the fair market monthly rent for the Property is $22,500.

13

Conclusion

Based on the foregoing, WB Kirby's Motion is GRANTED. The Court awards WB Kirby an administrative expense claim, on account of the Debtor's unjust enrichment occasioned by his continued post-petitioned use and occupancy of the Property, in the amount of $22,500/month, commencing on March 20, 2018, and pro-rated on a daily basis until the Debtor delivers possession (free of all tenancies) of the Property to WB Kirby. Within three business days of the entry of this Decision and Order, the Debtor shall pay WB Kirby an amount equal to the accrued, but unpaid administrative expense claim through August 31, 2018. Thereafter, the Debtor shall pay the administrative expense claim on a monthly basis, in advance, with payment due on or before the seventh day of the month (or first business day thereafter). The Debtor shall pay the pro-rata portion of the rent fixed by this Order for the period of March 20, 2018 through March 31, 2018.

IT IS SO ORDERED.

Dated: New York, New York
August 31, 2018

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge