NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

*In re*:

Igor Eric Kuvykin.,

                               Debtor.

-----------------------------------------------------------------x

Case No. 18-10760 (JLG)
Chapter 11

**MEMORANDUM DECISION AND ORDER SUSTAINING KIRBY HILL, LLC'S OBJECTION TO AMENDED STIPULATION AND ORDER DISMISSING CHAPTER 11 CASE AND GRANTING REQUEST TO CONVERT THE DEBTOR'S CHAPTER 11 CASE TO ONE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

**A P P E A R A N C E S**:

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
*Attorneys for WB Kirby Hill, LLC*
Jil Mazer-Marino, Esq.
Thomas R. Slome, Esq.
Michael Kwiatkowski, Esq.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194

WAYNE M. GREENWALD, P.C.
*Attorneys for the Debtor*
Wayne M. Greenwald, Esq.
475 Park Avenue South - 26th Floor
New York, New York 10016

WOLLMUTH MAHER & DEUTSCH LLP
*Attorneys for iPayment, Inc.*
William F. Dahill, Esq.
James N. Lawlor, Esq.
Olivia J. Italiano, Esq.
500 Fifth Avenue
New York, New York 10110

.

**HON. JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

Introduction[1]

Igor Kuvykin, the chapter 11 debtor herein (the "Debtor"), iPayment, a judgment creditor that is one of the Debtor's largest unsecured creditors, and the Office of the United States Trustee (the "U.S. Trustee") noticed for presentment an *Amended Stipulation and Order Dismissing Chapter 11 Case and Adv. Pro. 18-01573 (JLG)* (the "Amended Stipulation of Dismissal").[2] In that stipulation, they seek an order of this Court dismissing this Chapter 11 Case pursuant to section 1112(b) of the Bankruptcy Code. WB Kirby holds pre and post-petition claims against the Debtor. It objects to the stipulation and seeks to convert the Chapter 11 Case to one under chapter 7 of the Bankruptcy Code (the "Request to Convert").[3] The Debtor and iPayment oppose that request.[4] The U.S. Trustee advises that it stipulated to dismiss the case because its counsel incorrectly believed that WB Kirby consented to such relief. Its position is that the Court would be within its reasonable discretion in either dismissing or converting the case.

---

[1] Capitalized terms not identified in the Introduction are defined below.

[2] *See Notice of Presentment of Amended Stipulation and Order Dismissing Chapter 11 Case and Adv. Pro. No. 18-01573 (JLG)* [ECF No. 87].

[3] *See W.B. Kirby Hill, LLC's Objection to Stipulation and Order Dismissing Chapter 11 Case and Request to Convert the Case to a Chapter 7 Case* [ECF No. 97]. WB Kirby also filed an omnibus reply to the objections to its Request to Convert. *See W.B. Kirby Hill, LLC's Omnibus Reply to Objections to Request to Convert the Case to a Chapter 7 Case* [ECF No. 115].

[4] *See Opposition to the Objection to Amended Stipulation and Order Dismissing Chapter 11 Case and Request to Convert the Case to a Chapter 7 Case* [ECF No. 98]; *iPayment's Supplemental Response to WB Kirby's Objection to Amended Stipulation and Order Dismissing Chapter 11 Case and Request to Convert the Case to a Chapter 7 Case* [ECF No. 111] ("iPayment's Supplemental Response"); *Debtor's Response to WB Kirby Hill LLC's Request to Convert This Case and Second Belated Objection to the Stipulation to Dismiss This Case* [ECF No. 100]; *Debtor's Supplement Response to WB Kirby Hill LLC's Request to Convert This Case And Second Belated Objection to The Stipulation to Dismiss This Case* [ECF No. 113] ("Debtor's Supplemental Response").

1

The Debtor is a serial bankruptcy filer. In the eleven months that his case has been pending, he has filed two monthly operating reports ("MORs"). In addition, during that period, he has taken drastically different positions regarding the value of his assets. Early on, he asserted that his assets have significant value and he would use them to fund a chapter 11 plan. Now, in opposing the Request to Convert, he says that those same assets have little to no value. In short, the Debtor has not been forthcoming with respect to the extent and value of his estate and assets. That fact, and others, support the conversion of the Chapter 11 Case and appointment of a chapter 7 trustee. Accordingly, the Court sustains WB Kirby's objection to the Amended Stipulation of Dismissal, grants the Request to Convert, and converts the Chapter 11 Case to one under chapter 7 of the Bankruptcy Code.

## Jurisdiction

The Court has jurisdiction over the Amended Stipulation of Dismissal and Request to Convert pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the standing order of reference for bankruptcy cases and related proceedings for the United States District Court for the Southern District of New York. *See* Amended Standing Order of Reference, No. M10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## Background

WB Kirby Hill LLC ("WB Kirby") and iPayment, Inc. ("iPayment") are the Debtor's principal creditors. Both have filed proofs of claim herein. iPayment filed a claim in the amount of no less than $2,496,827.90 against the Debtor, which is based upon a $3,302,602.54 judgment (which includes attorneys' fees of $540,016.00) entered by the Supreme Court of the State of New York (the "State Court") in its favor against the Debtor. *See* Claim No. 7. On June 25,

2018, iPayment commenced an adversary proceeding against the Debtor in this Court seeking a determination that its debt is non-dischargeable pursuant to sections 523(a)(2)(A), 523(a)(6) and 523(c) of the Bankruptcy Code (the "Non-Dischargeability Action"). *See* Adv. Pro. No. 18-01573, *Complaint* [Adv. Pro. ECF No. 1].

WB Kirby is the original holder of a mortgage note (the "Note") and mortgage (the "Mortgage") against certain residential property located at 11 Mansion Hill Drive, Muttontown, New York 11791 (the "Property"). Those instruments are dated December 16, 2011, and were delivered to WB Kirby by the Debtor and his wife (together, the "Mortgagors") to evidence and secure a loan from WB Kirby to the Mortgagors in the original principal amount of $2,275,000. *See Declaration of Josh Nichols in Opposition to the Debtor's Motion for Order (A) Pursuant to 11 USC 362(c)(4) Imposing Automatic Stay Afforded the Debtor on his Third Bankruptcy Petition in One Year, and (B) Determining that Estate Property is Subject to the Automatic Stay,* dated April 26, 2018 [ECF No. 26] ¶¶ 6, 8-10. The Mortgagors occupy the Property as their residence. They have not made a payment toward the Note and Mortgage since February 26, 2014. *Id.* ¶ 16.

In response to the Mortgagors' various defaults under the Note and Mortgage, on May 6, 2014, WB Kirby commenced a foreclosure action (the "Foreclosure Action") in the State Court. *See Declaration of Anthony R. Filosa, Esq. in Opposition to the Debtor's Motion for Order (A) Pursuant to 11 USC 362(c)(4) Imposing Automatic Stay Afforded the Debtor on his Third Bankruptcy Petition in One Year, and (B) Determining that Estate Property is Subject to the Automatic Stay,* dated April 26, 2018 [ECF No. 26] ¶¶ 1, 3. The State Court granted WB Kirby summary judgment on its complaint and in June 2017, the Debtor sought a stay of the Foreclosure Action pending its appeal of the State Court's summary judgment order. *Id.* ¶ 6. By

3

Order dated September 8, 2017, and entered September 13, 2017, the State Court denied the Debtor's stay request. *Id*. On September 25, 2017, the State Court entered a judgment of foreclosure and sale in the Foreclosure Action granting judgment in favor of WB Kirby in the amount of $3,432,193.32, as of January 25, 2017, plus interest and fees. *Id*. ¶ 4.

WB Kirby scheduled a foreclosure sale for November 21, 2017 (the "Foreclosure Sale"). *Id*. ¶ 5. One day prior to the sale, the Debtor, acting *pro se,* filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "EDNY Bankruptcy Court") (the "First Chapter 13 Case").[5] On December 1, 2017, WB Kirby filed a motion seeking the entry of an order dismissing the case, or, in the alternative, granting it relief from the automatic stay to proceed with the Foreclosure Sale.[6] The Debtor did not file a response to the motion. The EDNY Bankruptcy Court granted the motion and on January 10, 2018, dismissed the First Chapter 13 Case.[7] Thereafter, WB Kirby re-advertised and rescheduled the Foreclosure Sale for February 20, 2018. *Id*. ¶ 5.

On November 20, 2017, Leonid Kuvykin, the Debtor's father, filed an emergency order to show cause in the State Court seeking to intervene in the Foreclosure Action. *Id*. ¶ 7. The

---

[5] *See* EDNY Bankruptcy Court Case No. 17-77162 (LAS), *Petition and Schedules* (ECF Doc. No. 1).

[6] *See* EDNY Bankruptcy Court Case No. 17-77162 (LAS), *Motion of Creditor WB Kirby Hill, LLC for Entry of Order (A) Pursuant to 11 U.S.C. §§ 109(e) and/or 1307(c), Dismissing This Case; or, in the Alternative, (B) Pursuant to 11 U.S.C. §§ 362(d) and 1301(c), Granting Relief from the Automatic Stay and Codebtor Stay* (ECF Doc. No. 10).

[7] *See* EDNY Bankruptcy Court Case No. 17-77162 (LAS), Order Dismissing Chapter 13 Case (ECF No. 18). The court dismissed the First Case on three grounds:

> (i) the debtor's secured debt as scheduled in Schedule D to the debtor's bankruptcy petition exceeds the secured debt limit of $1,184,200 set forth in 11 U.S.C. § 109(e), (ii) the debtor has failed to timely file a chapter 13 plan as required pursuant to 11 U.S.C. § 1321 and Rule 3015(b) of the Federal Rules of Bankruptcy Procedure, and (iii) the debtor has failed to commence making timely payments under 11 U.S.C. § 1326[.]

*Id*. at 2.

4

State Court refused to sign the emergency order to show cause. *Id*. On February 16, 2018, the Debtor, again acting *pro se*, filed a voluntary chapter 13 petition in the EDNY Bankruptcy Court (the "Second Chapter 13 Case").[8] On February 22, 2018, WB Kirby filed a motion in the Second Chapter 13 Case seeking the entry of an order dismissing the case, or, alternatively, granting it relief from the automatic stay to proceed with the Foreclosure Sale.[9] The Debtor opposed the motion. The EDNY Bankruptcy Court granted the motion and on March 8, 2018, dismissed the Second Chapter 13 Case.[10] In the wake of that dismissal, WB Kirby rescheduled the Foreclosure Sale for March 20, 2018. *Id*. ¶ 8; Ex. 5.

On March 19, 2018 (the "Petition Date"), the Debtor, represented by counsel, commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). By email dated March 19, 2018, Debtor's counsel advised counsel for WB Kirby "that the Foreclosure of [Debtor's] property is Stayed [sic] under Bankruptcy Code 362a [sic]." *Id*. ¶ 9; Ex. 6. WB Kirby contends that by application of section 362(c)(4) of the Bankruptcy Code, the automatic stay did not take effect in this case on the Petition Date. It went forward with the Foreclosure Sale. At that sale, it was the highest bidder for the Property with its credit bid of $3,000,000. On March 20, 2018, the State Court-appointed referee executed and transferred the deed to the Property to WB Kirby. *Id*. ¶ 10; Ex. 7. The

---

[8] *See* EDNY Bankruptcy Court Case No. 18-71038 (LAS), *Petition and Schedules* (ECF Doc. No. 1).

[9] *See* EDNY Bankruptcy Court Case No. 18-71038 (LAS), *Motion of Creditor WB Kirby Hill, LLC for Entry of Order (A) Pursuant to 11 U.S.C. §§ 109(e) and/or 1307(c), Dismissing Serial Case; and (B) Pursuant to 11 U.S.C. § 362(d)(4), Granting In Rem Relief from the Automatic Stay; or, in the Alternative, (C) Pursuant to 11 U.S.C. §§ 362(d)(1) or (d)(2) and 1401(c), Granting Relief from the Automatic Stay or Codebtor Stay* (ECF Doc. No. 9).

[10] *See* EDNY Bankruptcy Court Case No. 18-71038 (LAS), *Order Dismissing Chapter 13 Case* (ECF Doc. No. 21). The EDNY Bankruptcy Court dismissed the Second Chapter 13 Case because the Debtor's scheduled secured debt exceeded the debt limitations set forth in 11 U.S.C. § 109(e). *See id*. at 1.

5

referee filed its Referee's Report of Sale for the Foreclosure Sale with the Nassau County Clerk on April 18, 2018. *Id.* ¶ 11.

Since the Petition Date, the Debtor has remained in possession and control of his assets as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. He also has remained in possession and control of the Property. No committee of unsecured creditors has been appointed in this case. On April 18, 2018, the Debtor filed a motion (the "Stay Motion") seeking the entry of an order of this Court (i) pursuant to sections 362(c)(4)(B) and 362(c)(4)(D)(i)(III) of the Bankruptcy Code "imposing" the automatic stay in this case; and (ii) determining that the automatic stay affected property of the Debtor's estate as of the Petition Date.[11] Under section 362(c)(4)(A) of the Bankruptcy Code, the automatic stay does not take effect in the case of an individual debtor who has had two or more cases dismissed in the previous year.[12] Pursuant to section 362(c)(4)(B), upon the motion of a party in interest filed within 30 days after the filing of the later case, and after notice and hearing, the court may order the automatic stay to take effect as to any and all creditors (subject to such conditions or limitations that the court may impose) if such party demonstrates that the later case was filed in good faith as to the creditors stayed by the filing.[13] Under the statute, there is a presumption that

---

[11] *See The Debtor's Verified Motion for Orders: A.) Pursuant to 11 U.S.C. § 362(c)(3)(C)(i)(III) [sic], Imposing Extending the Automatic Stay Afforded The Debtor on His Third Bankruptcy Petition in One Year And B.) Determining That Estate Property is Subject to The Automatic Stay With Points and Authorities* [ECF No. 20].

[12] Section 362(c)(4)(A)(i) states, in relevant part, as follows:

> if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case[.]

11 U.S.C. § 362(c)(4)(A)(i).

[13] Section 362(c)(4)(B) states, as follows:

the case was not filed in good faith, although it may be rebutted by clear and convincing evidence to the contrary. *See* 11 U.S.C. § 362(c)(4)(D). WB Kirby and iPayment opposed the Stay Motion.[14] After the Court conducted an initial hearing on the motion, at the parties' request, the Court adjourned the matter to permit them to conduct discovery.

On August 3, 2018, WB Kirby moved this Court pursuant to sections 105 and 503 of the Bankruptcy Code, and Rule 9014 of the Federal Rules of Bankruptcy Procedure, for an order compelling the Debtor to pay the administrative expense incurred by the Kuvykins by reason of their use and occupancy of the Property. On August 31, 2018, over the Debtor's objection, and after a hearing on the motion, the Court granted the motion. *See Memorandum Decision and Order Granting WB Kirby Hill, LLC's Motion for Immediate Payment of Administrative Expenses* [ECF No. 70] (the "Decision and Order"). Pursuant thereto, the Court:

> Awarded WB Kirby an administrative expense claim, on account of the Debtor's unjust enrichment occasioned by his continued post-petitioned use and occupancy of the Property, in the amount of $22,500/month, commencing on March 20, 2018, and pro-rated daily until the Debtor delivers possession (free of all tenancies) of the Property to WB Kirby.
>
> Directed that within three business days of the entry of the Decision and Order, the Debtor pay WB Kirby an amount equal to the accrued, but unpaid administrative expense claim through August 31, 2018.

---

if, within 30 days after the filing of the later case, a party in interest requests the court may order the stay to take effect in the case as to any or all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing, only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed[.]

11 U.S.C. §§ 362(c)(4)(B).

[14] *See Opposition of Creditor WB Kirby Hill, LLC to Debtor's Motion for Order (A) Pursuant to 11 U.S.C. § 362(c)(4) Imposing Automatic Stay Afforded The Debtor on His Third Bankruptcy Petition in One Year, And (B) Determining That Estate Property is Subject to the Automatic Stay* [ECF No. 26]; *Opposition of Creditor iPayment, Inc. to Debtor's Motion for Order (A) Pursuant to 11 U.S.C. § 362(c)(4) Imposing Automatic Stay Afforded by the Debtor on His Third Bankruptcy Petition in One Year, And (B) Determining That Estate Property is Subject to The Automatic Stay* [ECF No. 28].

> Directed that the Debtor pay the administrative expense claim monthly, in advance, with payment due on or before the seventh day of the month (or first business day thereafter), and to pay the pro-rata portion of the rent fixed by the Decision and Order for the period of March 20, 2018 through March 31, 2018.

*Id*. at 14. As of August 31, 2018, the Debtor was in default under the Decision and Order in the amount of $120,483.87. On September 12, 2018, WB Kirby filed a notice of presentment of judgment seeking the entry of a money judgment against the Debtor, in his personal capacity, in that amount. *See Notice of Presentment of Money Judgement, Pursuant to Bankruptcy Rule 7056 and Local Bankruptcy Rule 9074-1(D)* [ECF Nos. 73, 83]. The Debtor objected to the entry of such judgment. *See Debtor's Objection to WB Kirby Hill LLC's Notice of Presentment of Judgment* [ECF No. 77]. The Court sustained that objection.

On August 29, 2018, in furtherance of the Stay Motion, the Debtor, iPayment and WB Kirby submitted a proposed Joint Pre-Trial Order to the Court. *See Joint Pre-Trial Order* [ECF No. 69] (the "Proposed Pre-Trial Order"). On September 18, 2018, the Debtor withdrew the Stay Motion. *See Notice of Debtor's Withdrawal of Motion Seeking Orders Imposing the Automatic Stay In This Case Pursuant To 11 U.S.C. § 362(c)(4)* [ECF No. 76]. On September 20, 2018, Debtor's counsel filed a status letter herein advising the Court that "[t]he Debtor advised the U.S. Trustee that he will stipulate to dismissing this case." *See* [ECF No. 78].

On October 15, 2018, iPayment noticed the Amended Stipulation of Dismissal for presentment to the Court. In that stipulation, the Debtor, iPayment, and the U.S. Trustee agree that "cause" exists under sections 1112(b)(4)(E)-(F) of the Bankruptcy Code to dismiss the case because the Debtor: (1) failed to comply with the Decision and Order, and (2) has failed to timely file MORs in the case. The stipulation also provides that if the case is dismissed, all

8

orders and judgments entered by the Court will remain in full force and effect and the Debtor will pay the United States Trustee's fee. *See* Amended Stipulation of Dismissal ¶¶ 2-3.[15]

On November 8, 2018, WB Kirby objected to the Amended Stipulation of Dismissal and requested conversion of the Chapter 11 Case to a chapter 7 case. *See W.B. Kirby Hill, LLC's Objection to Stipulation And Order Dismissing Chapter 11 Case And Request to Convert The Case to a Chapter 7 Case* [ECF No. 93] (the "Objection to Dismissal").[16] Three days later, WB Kirby filed the Request to Convert. The Debtor (*see* ECF Nos. 100, 113) and iPayment (s*ee* ECF Nos. 98, 111) oppose that relief. At the hearing on these matters, the U.S. Trustee clarified that it stipulated to dismissing the case because it incorrectly believed that WB Kirby consented to the dismissal of the case. It takes the position that the Court would be within its reasonable discretion in either dismissing or converting this case.

## Discussion

The Debtor does not have an absolute right to dismiss the Chapter 11 Case. *See, e.g.*, *In re Just Plumbing & Heating Supply, Inc.*, No. 11-10151 (MG), 2011 WL 4962993 at *2 (Bankr. S.D.N.Y. Oct. 18, 2011) ("Unlike chapter 12 and 13 debtors, 'a Chapter 11 debtor does not enjoy an absolute right to a dismissal of its bankruptcy.'" (quoting *In re Kingsbrook Dev. Corp.*, 261 B.R. 378, 379 (Bankr. W.D.N.Y. 2001))). Section 1112 of the Bankruptcy Code governs resolution of the matters before the Court. As relevant, it states that

> on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause[.]

---

[15] The stipulation also calls for the dismissal of the Non-Dischargeability Action. In doing so, it amends a prior version of the stipulation [ECF No. 86], which omitted certain language concerning the dismissal of the Non-Dischargeability Action. *See* Amended Stipulation of Dismissal at 2.

[16] The Objection to Dismissal is substantially the same as the Request to Convert but was docketed three days earlier with a different title.

9

11 U.S.C. § 1112(b)(1). Subsection (b)(4) sets forth sixteen non-exclusive examples of "cause." *See* 11 U.S.C. § 1112(b)(4); *see also C-TC 9th Ave. P'ship. v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997) ("It is important to note that this list is illustrative, not exhaustive."); *Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989) (section 1112(b)(4) "sets out a non-exhaustive list of circumstances in which conversion or dismissal might be appropriate[.]"). The Court will apply a two-step analysis in determining whether to dismiss or convert this case. First, it will consider whether "cause" exists for relief under the statute. If it does, the Court will determine whether dismissal or conversion of the case is "'in the best interest of the creditors and the estate.'" *See In re Superior Siding & Window, Inc.,* 14 F.3d 240, 242 (4th Cir. 1994) ("A motion filed under this section invokes a two-step analysis, first to determine whether cause exists either to dismiss or to convert the Chapter 11 proceeding to a Chapter 7 proceeding, and second to determine which option is in the best interest of creditors and the estate." (citing *In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 386 (E.D. Pa. 1991))) (internal quotation marks omitted); s*ee also In re BH S&B Holdings LLC*, 439 B.R. 342, 351 (Bankr. S.D.N.Y. 2010) ("It is within the court's discretion to convert or dismiss a chapter 11 case, provided the best interests of creditors and the estate are served.") (internal citation omitted). There is cause under sections 1112(b)(4)(E) and (F) to either dismiss or convert the Chapter 11 Case because the Debtor has stipulated that (i) he is delinquent in filing his MORs; and (ii) he is in breach of the Decision and Order. *See* Amended Stipulation of Dismissal at 1-2.[17] At issue is whether "the best interests of the creditors and the estate" will be better served by dismissing or converting the case. *See* 11 U.S.C. § 1112(b)(1).

---

[17] As relevant, section 1112(b)(4) of the Bankruptcy Code states that:

For purposes of this subsection, the term 'cause' includes—

10

Courts apply a "facts and circumstances" test in determining whether dismissal or conversion is in "the best interests of creditors and the estate." Among the factors (the "Factors") that courts may consider in making that determination are:

(1) Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.

(2) Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.

(3) Whether the debtor would simply file a further case upon dismissal.

(4) The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.

(5) In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.

(6) Whether any remaining issues would be better resolved outside the bankruptcy forum.

(7) Whether the estate consists of a "single asset."

(8) Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

(9) Whether a plan has been confirmed and whether any property remains in the estate to be administered.

(10) Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

See COLLIER ON BANKRUPTCY ¶ 1112.04[7] at 46-48 (Richard Levin & Henry J. Sommers eds., 16th ed. 2018). See, e.g., *In re BH S&B Holdings, LLC*, 439 B.R. at 346 (citing the aforementioned Factors); *In re FRGR Managing Member LLC*, 419 B.R. 576, 580-81 (Bankr. S.D.N.Y. 2009) (same). No Factor is determinative and the Court need not give equal weight to

---

    \*    \*    \*    \*

(E) failure to comply with an order of the court [and]

(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter[.]

11

the Factors. For the reasons set forth below, the Court finds that in applying the Factors, it is in the best interests of the creditors and the estate that the Chapter 11 Case be converted to one under chapter 7 of the Bankruptcy Code.

The Debtor's estate does not consist of a "single asset," the Debtor has not confirmed a reorganization plan, and there is no evidence that there is a need for a trustee to address possible environmental or other safety matters or concerns relating to the Debtor or his estate. Accordingly, Factors 7, 9, and 10 have no application in this case. In contrast, Factor 3 is relevant to the resolution of the dispute among the parties. The Debtor is a serial bankruptcy filer. As such, application of that Factor favors converting this case to one under chapter 7 of the Bankruptcy Code. *See, e.g.*, *In re Strawbridge*, No. 09-17208-MG, 2010 WL 779267, at *5 (Bankr. S.D.N.Y. Mar. 5, 2010) (converting case and noting "[w]here serial filings are an issue, conversion is in the best interests of the creditors." (citing *In re Staff Inv. Co.*, 146 B.R. 256, 259-60 (Bankr. E.D. Cal. 1992) (vacating order dismissing case where conversion was appropriate to prevent abuse of bankruptcy process))). Likewise, application of Factors 1, 2, 4 and 5 support WB Kirby's assertion that the Court should convert the case. In substance, they focus on different elements that courts consider when determining whether dismissal or conversion of a case will maximize the value of the bankruptcy estate for the benefit of its creditors. In applying Factors 1 and 2, courts consider, respectively, whether the dismissal of a case will result in a windfall to creditors who received prepetition preferential transfers, and whether creditors will be prejudiced from the loss of rights, or potential rights, available to them under the Bankruptcy Code, that will not be available to them if the case is dismissed. *See, e.g.*, *In re Superior Siding & Window, Inc.*, 14 F.3d at 241 (vacating dismissal order of lower court because assets were insufficient to satisfy creditors' claims and certain creditors had obtained preferential positions);

12

*see also In re Surtonics, Inc.,* Case No. 1305672-8-SWH, 2014 WL 2581159, at *3-4 (Bankr. E.D.N.C. June 9, 2014) (denying debtor's motion to dismiss because, *inter alia*, dismissal would result in the loss of a creditor's right to repossess property pursuant to 11 U.S.C. § 365(d)(4)). If the Court dismisses the Chapter 11 Case, WB Kirby will lose its priority right to payment of its administrative expense claim. *See* 11 U.S.C. § 726(a)(1). That weighs against dismissing this case. *See In re Sandia Resorts, Inc.,* 562 B.R. 490, 496-97 (Bankr. D. N.M. 2016) (finding that where dismissal would cause administrative claim holders to lose their priority rights, as well as likelihood of payment, Factor 2 weighed in favor of conversion). Dismissal of the case may also provide a windfall to creditors who received preferential transfers. The Debtor has not scheduled any preferential transfers. However, it is unclear whether, and to what extent, the Debtor has conducted a preference analysis. A chapter 7 trustee would be best positioned to conduct such an analysis. In doing so, the policy of promoting equality of distribution among similarly situated creditors would be safeguarded. *See In re Sullivan*, 522 B.R. 604, 613 (9th Cir. B.A.P. 2014) ("When determining the best interest of the creditors under § 1112(b), the Code's fundamental policy of achieving equality among creditors must be a factor considered[.]") (internal citations omitted); *see also In re Babayoff*, 445 B.R. 64, 82 (Bankr. E.D.N.Y. 2011) ("[A] trustee's ability to examine the estate as an independent fiduciary and administer it in an orderly fashion protects creditors[.]") (internal citation omitted). Accordingly, the Court weighs Factor 1 in favor of conversion.

The focus of Factors 4 and 5 is on whether there are estate assets available for a trustee to liquidate for the benefit of creditors. *See*, *e.g.*, *In re Staff Inv. Co.*, 146 B.R. at 261 (reasoning the "prime criterion for assessing the interest of the estate [when weighing dismissal or conversion] is the maximization of its value as an economic enterprise"); *In re Rubio*, No. 09-

75163-ast, 2011 WL 124458, at *6 (Bankr. E.D.N.Y. Jan. 13, 2011) (ordering dismissal of chapter 11 case where no avoidance actions were identified and the court found that after exemptions, any residual value of the debtor's personal property would be consumed by chapter 11 and chapter 7 administrative expenses); *cf. In re Halal 4 U LLC*, No. 08-15216 (MG), 2010 WL 3810860, at *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (converting case and noting "[b]asically, the exact nature of the Debtor's assets remains unknown, and it makes sense to appoint a trustee to examine exactly what assets are available for creditor distribution."). The Debtor's financial picture is not clear. The Debtor has been in bankruptcy for approximately eleven months but has filed only two MORs. He has not filed an MOR since the April 2018 MOR. *See Monthly Operating Report for April Reporting Period* [ECF No. 40].[18] Accordingly, the Debtor's creditors have had no insight—essentially for the life of this case—with respect to: the Debtor's cash receipts, disbursements, bank account statements and reconciliations, value of personal property, and whether any payments have been made with respect to prepetition liabilities—all of which (among other things) must be disclosed in MORs.[19] That supports WB Kirby's Request to Convert. The need to appoint a chapter 7 trustee is further underscored by the fact that the Debtor has offered conflicting evidence regarding the potential value of his estate. Shortly after commencing this case, the Debtor argued in support of the Stay Motion that he filed this case in

---

[18] The April 2018 MOR represents that the Debtor received $3,000 in wages as well as $32,697 in "other income", which is largely attributable to an insurance claim and Accelerated Technologies Holdings Corp. stock valued at $10,000. *Id.* at pgs. 2-3 of 16. The only personal property listed is a de-minimis amount of cash and $10,000 in stocks. *Id.* at pg. 7 of 16. The Debtor did not record any disbursements for "food, clothing, and hygiene." Rather, the Debtor only lists disbursements for certain medical expenses, automobile expenses, insurance, and utilities. *Id.* at pg. 2 of 16. The Debtor has also indicated that funds have been disbursed from an account other than a debtor in possession account. *Id.* at pg. 12 of 16.

[19] The United States Trustee's Office for the Southern District of New York requires an MOR containing this information to be filed in each chapter 11 case on the 15th day of the month following the relevant reporting period. *See* U.S. Department of the United States Trustee, Region 2 – New York, Connecticut, and Vermont, *Operating Guidelines and Reporting Requirement for Debtors in Possession and Trustees* (December 14, 2017), at 4, available at: https://www.justice.gov/ust-regions-r02/region-2-general-information#ch11.

14

good faith because there were substantial changes in his personal and financial affairs since the dismissal of his last case. *See* Stay Motion ¶¶ 2, 46, 62, 65. In connection therewith, the Debtor contended in the Proposed Pre-Trial Order that: (i) he anticipated receiving income of approximately $30,000 to $40,000 per month based on a consulting agreement with Accelerated Technologies Holdings Corp. ("ATHC") (Proposed Pre-Trial Order ¶ 13 at pg. 17); (ii) he set the terms for a consulting agreement with Kading Companies S.A. which would provide him with a monthly income of $10,000 (*id*. ¶¶ 14-15); (iii) he intended to fund a plan of reorganization through distributing shares of ATHC stock to creditors and, as of May 29, 2018, the price of such stock was $0.80 per share (*id*. ¶¶ 16-17); (iv) imposing the automatic stay is "necessary for" and "facilitates" the Debtor's reorganization (*id.* ¶ 18); and (v) "[t]here is reason to conclude that the Instant Case will result in a confirmed plan that will be fully performed" because "the Debtor can satisfy his obligations." *Id*. ¶¶ 22-23. Further, in his schedules he asserted that he holds claims against Allstate and 800 Fund in the sums of $4,000,000 and $5,000,000 respectively. The Debtor now contends that the value of his stock in ATHC is "dubious" because it is restricted, and that the Debtor's schedules reveal "no great value to the estate." *See* Debtor's Supplemental Response ¶¶ 10-14. The Court finds that in these circumstances, creditors would benefit from conversion of the Chapter 11 Case and the appointment of a chapter 7 trustee rather than putting the Debtor back in control of his assets through a dismissal order. *See Matter of Natrl Plants & Lands Mgmt. Co., Ltd.*, 68 B.R. 394, 396 (Bankr. S.D.N.Y. 1986) (granting motion to convert and finding creditors' interests may be jeopardized by allowing the debtor to proceed with liquidation in chapter 11 without the benefit of an independent trustee's supervision); *Lakefront Inv'rs LLC v. Clarkson*, 484 B.R. 72, 86 (D. Md. 2012) (noting that "[l]ack of trust in the debtor" is an important factor in comparing creditors' interest in bankruptcy with those under state law).

15

The Debtor's inconsistent and contradictory representations regarding his assets, coupled with his failure to file his MORs, supports the appointment of a chapter 7 trustee to ascertain the scope of the Debtor's estate and liquidate estate property for the benefit of all creditors. *See In re Strawbridge*, 2010 WL 779267, at *5 (determining creditors' best interests served by conversion of case and noting independent trustee would be appointed to examine debtor's estate and properly value and liquidate property for the benefit of creditors). The Debtor and iPayment each contend that the conversion of the Chapter 11 Case and the appointment of a chapter 7 trustee would effectively make the trustee WB Kirby's collection agent because any assets the trustee recovers would likely be used to satisfy WB Kirby's administrative claim. *See* iPayment's Supplemental Response at 4; Debtor's Supplemental Response ¶ 6. This argument is undermined by the Debtor's inconsistent representations regarding the value of his estate and the fact that the Debtor has not filed an MOR since the April MOR. Moreover, a chapter 7 trustee would not be beholden to WB Kirby as its duty extends to all creditors of the estate. *See* 11 U.S.C. § 704(a)(1) (trustee has duty to collect and reduce to money estate property and close estate "as expeditiously as is compatible with the best interests of parties in interest"). Application of Factors 4 and 5 therefore weigh in favor of converting the Chapter 11 Case to one under chapter 7 of the Bankruptcy Code.

In applying Factor 8, courts consider the degree to which a debtor has cooperated with creditors and complied with obligations imposed by the Bankruptcy Code. *In re Ferri*, No. 13-08-12399 JA., 2010 WL 1418147, at *4 (Bankr. D.N.M. Apr. 6, 2010) is instructive. In ordering the conversion of the debtor's chapter 11 case, that court reasoned as follows:

> Ms. Ferri has enjoyed the protection of the automatic stay for some nineteen months while her creditors were held at bay, yet she failed to appropriately discharge her duties as a debtor in possession. She filed operating reports for the first six months of her chapter 11 case all at once, instead of monthly, and the operating reports she filed contain

16

>   unaccounted for cash withdrawals, evidence of payments to professionals not approved by the Court, and other deficiencies. Further, no operating reports were filed for an extended period; therefore, no accounting of estate income and expenses has been made for that period. It is in the best interest of creditors and the estate for an independent chapter 7 trustee to determine whether to seek to recover unauthorized funds expended in furtherance of post-petition transactions.
>
>   Debtor argues, *inter alia,* that the Court should dismiss rather than convert Debtor's case because dismissal will simply return creditors to their former positions, that there are no viable, non-exempt assets to be administered in a Chapter 7 case, and that any remaining collection efforts are best pursued through garnishment under state law. Counsel for the Debtor further represented that he would not file another bankruptcy case on behalf of the Debtor if this case were dismissed. The Court is not persuaded that these factors are sufficient grounds to dismiss rather than convert the Debtor's case. The operating reports, together with the Debtor's own testimony, demonstrate that the Debtor has failed to provide a sufficient accounting of her business affairs during the pendency of this case for the Court to make any of those determinations regarding assets of the estate and how creditors may best collect their claims. Based on the foregoing, the Court concludes that conversion, rather than dismissal, is in the best interest of creditors and the estate.

*Id.*; *see also In re Sal Caruso Cheese, Inc.,* 107 B.R. 808, 818 (Bankr. N.D.N.Y. 1989) (ordering conversion after finding "[t]he record reveals an absolute disregard of the strictures of the Bankruptcy Code or at best a calculated strategy of selective compliance."); *In re Citi-Toledo Partners,* 170 B.R. 602, 609 (Bankr. N.D. Ohio 1994) (where a debtor in possession has failed to perform its fiduciary duties, conversion is warranted).  Application of Factor 8 supports WB Kirby's contention that the case should be converted.  It is apparent that the Debtor filed this case—just as he filed his prior two cases—to advance his own interests to the detriment of creditors.  The Debtor has kept creditors in the dark with respect to his finances by not filing his MORs.  He has willfully disregarded the Decision and Order by failing to make any payments to WB Kirby, while continuing to occupy the Property.  Conversion of the Chapter 11 Case and the appointment of a chapter 7 trustee is warranted to protect creditors' interests and therefore Factor 8 weighs in favor of conversion.

In applying Factor 6, courts consider whether parties in interest with claims against the debtor will be better positioned to resolve those claims in state or other non-bankruptcy courts. *See, e.g.*, *In re Lenexa Hotel, L.P.*, Case No. 16-22172, 2018 WL 1115199, at *12 (Bankr. D. Kan. Feb. 26, 2018) (dismissing case and reasoning, in part, "unsecured creditors could use state and federal law remedies to obtain payment of their claims").  There is nothing to suggest that creditors in this case would be better positioned to resolve their claims against the Debtor outside of bankruptcy than within.  iPayment asserts that it has been unsuccessful in collecting the multi-million-dollar judgement it was awarded against the Debtor in October 2015 and there is no reason to conclude that dismissal better positions iPayment to collect its claim against the Debtor.  Nonetheless, iPayment says that the Court should deny the Request to Convert and approve the Amended Stipulation of Dismissal because if the Court converts the case, it will be forced to incur costs and expenses in litigating the Non-Dischargeability Action in this Court. *See* iPayment's Supplemental Response at 10-11.  However, conversion of this case would not prejudice iPayment, as it has the prerogative to either continue or discontinue the Non-Dischargeability Action.  If it decides to continue the proceeding—and is successful—it stands to be the only creditor at the resolution of this case with a claim that can be pursued against the Debtor.  There is nothing inequitable about that.

Finally, iPayment and the Debtor contend that because the automatic stay is not applicable in this case, conversion would not serve the best interest of creditors because they would be actively competing with the chapter 7 trustee for assets.  *See* Debtor's Supplemental Response ¶¶ 3-4; iPayment's Supplemental Response at 7.  This argument is unconvincing. First, iPayment's and the Debtor's concern is hypothetical—even though no stay is in effect in this case, no party in interest other than WB Kirby has taken any action yet vis-à-vis estate

18

assets. Second, upon conversion, a trustee will be appointed that will have tools at his or her disposal which are only available under bankruptcy law which can be used to discover, obtain, and liquidate estate assets. *See*, *e.g.*, Fed. R. Bankr. P. 2004 (providing that upon motion of any party in interest the court may order the examination of any entity to determine the nature and extent of the bankruptcy estate); 11 U.S.C. §§ 542(a) (detailing trustee's power to compel turnover of certain estate property); 11 U.S.C. §§ 544-551 (detailing trustee's ability to recover certain prepetition and postpetition transfers of estate property). In this regard, the trustee is generally better suited to recover estate assets under bankruptcy law than individual creditors under non-bankruptcy law. *See In re Staff Inv. Co.*, 146 B.R. at 261 (noting that "the trustee's powers to recover property are generally greater than would be available outside of bankruptcy"). Further, the Court will continue to exercise oversight over this case and will be able to resolve any disputes to the extent they arise with the goal of maximizing the value of the estate for all creditors.

<u>Conclusion</u>

Based on the foregoing, the Court sustains WB Kirby's objection to the Amended Stipulation of Dismissal, grants the Request to Convert, and converts the Debtor's Chapter 11 Case to one under chapter 7 of the Bankruptcy Code.

IT IS SO ORDERED.

Dated: New York, New York
    February 26, 2019

                                         /s/ *James L. Garrity, Jr.*
                                         Honorable James L. Garrity, Jr.
                                         United States Bankruptcy Judge